**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL DANN | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-5740 |
| LINCOLN NATIONAL CORP., et al., | : | |
| Defendants | : | |

**April _20__, 2010**                                               **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff Michael Dann ("Dann") is a participant in a 401(k) employee retirement savings plan sponsored by Lincoln National Corporation ("LNC," "Lincoln National," or "Company") that held Company common stock as an investment. Dann brings this purported class action on behalf of the LNC Employees' Savings and Retirement Plan (the "Employees' Plan"), the Lincoln National Life Insurance Company Agents' Savings and Profit-Sharing Plan (the "Agents' Plan"), and the Delaware Management Holdings, Inc. Employees' Savings and 401(k) Plan (the "Delaware Plan") (collectively, the "Plans").

Participants in each one of the Plans chose how their contributions were invested. One of their investment options was an employee stock ownership plan ("ESOP"), which invested primarily in LNC common stock. During the alleged Class Period, which began on February 4, 2008, LNC common stock lost a significant percentage of its value. Dann brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*,

alleging that it was imprudent for the Plans to invest in LNC common stock and that Defendants[1] breached their fiduciary duty by failing to provide plan participants with complete and accurate information about investing in LNC (Count I). Dann also contends that Defendants Lincoln National and Dennis Glass ("Glass"), Lincoln National's CEO, President, and Board member during the Class Period, failed to adequately monitor the other fiduciaries and failed to provide them with accurate information (Count II).

Defendants move to dismiss the Amended Complaint, arguing: (1) that Dann lacks standing to bring this action on behalf of the Agents' Plan and the Delaware Plan, and (2) that Defendants are entitled to a presumption of prudence for their decision to invest in LNC common stock, met their disclosure obligations, and never made misleading statements about the risks associated with investing in LNC.

For the reasons that follow, I will deny Defendants' Motion to Dismiss.

---

[1] Defendant Lincoln National holds Defendants Lincoln National Life Insurance Company and Delaware Management Holdings, Inc. as subsidiaries. Defendant Dennis R. Glass ("Glass") served as Lincoln National's CEO, President, and as a member of the Board during the Class Period. As CEO, Glass appointed members of the LNC Benefits Committee ("Benefits Committee"). Defendant Benefits Committee was a Named Fiduciary and Administrator, as those terms are defined under ERISA, of the Plans during the Class Period. Defendants William David, Kelly Davis, Audrey Im, Sharon Marnien, Carolyn McIntyre, Kim Miner, Timothy Sexton, and Rebecca Silva served as members of the Benefits Committee during the Class Period. Collectively, these parties are referred to as "Defendants."

# I. BACKGROUND[2]

Lincoln National, through various subsidiaries, sells wealth protection, accumulation, and retirement income products and solutions. As part of its business model, Lincoln National collects cash on the sales of insurance policies and annuities and then invests those funds with the goal of earning a profitable return. As financial markets struggled in 2008 and 2009, Lincoln National became increasingly exposed to heavy losses because of its investments in mortgage-backed securities, structured investment products, and other derivative securities. Dann contends that because Defendants knew or should have known of the Company's exposure to investment losses, it was imprudent to continue investing Plan assets in Company stock. Further, Dann alleges that Defendants failure to disclose the Company's exposure to investment losses prevented plan participants from making informed investment decisions.

Each of the Plans is an "employee pension benefit plan," as defined by ERISA. See 29 U.S.C. § 1002(2)(A). Each Plan described its purpose and nature in similar terms:

> The purpose of the Plan is to reward participating [Employees or Agents] for their service and to provide them and their Beneficiaries with the retirement, death, and other benefits provided by the Plan. The Plan is a defined contribution profit sharing plan with a cash or deferred arrangement and matching contributions, as well as an ESOP component.

---

[2] Unless otherwise noted, all facts are taken from the Amended Complaint, documents integral to or relied upon in the Amended Complaint, and other undisputedly authentic documents attached to Defendants' Motion to Dismiss. These include the text of the Plans, Summary Plan Descriptions and Prospectuses distributed to plan participants, and a table containing the price history of LNC common stock. See Ieradi v. Mylan Lab., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000) (considering the price history of the stock at issue on a motion to dismiss). All facts are considered in the light most favorable to the plaintiff, the non-moving party.

Employees' Plan § 1.4; Agents' Plan § 1.3; Delaware Plan § 1.4.[3]  LNC employees who chose to

participate in the Plans had individual investment accounts holding their contributions.

Participants could invest their contributions in any of the investment options offered under the

Plans.[4]  One of these investment options was the LNC Common Stock Fund, which invested

primarily in Company stock and was designated as an ESOP.  Employees' Plan § 13.1; Agents'

Plan § 13.1; Delaware Plan § 13.1 ("The Company has designated the LNC Common Stock Fund

as the ESOP portion of the Plan, which is a stock bonus plan invested primarily in qualifying

employer securities.").

Each of the Plans provided a Summary Plan Description & Prospectus ("SPD") to

educate plan participants about their investment options.  The SPDs warned participants:

> The selection of Investment Options is your sole responsibility, to be made in
> careful consideration of your investment needs and objectives.  You should be
> aware that the stock market fluctuates daily and impacts the value of your account,
> either positively or negatively.

Employees' Plan SPD at 8; Delaware Plan SPD at 6.  <u>See also</u> Agents' Plan SPD at 33.  Further,

with respect to the LNC Common Stock Account, the SPDs provided the following information:

> •   **Investment Objectives:**  This Investment Option is referred to as an
>     Employee Stock Ownership Plan.  It is designed to provide participants
>     with the opportunity to invest in employer securities.

---

[3] Because the portions of the Plans governing the ESOPs are essentially identical and Dann's
allegations regarding the prudence of investing in LNC common stock and accuracy of LNC's
disclosures are the same for each of the Plans, I discuss the Employees' Plan, the Agents' Plan,
and the Delaware Plan collectively in this Memorandum.

[4] Although participants generally had discretion as to how their contributions were invested, on
August 18, 2008, Lincoln National announced that the Plans would change providers for record
keeping, administrative, and trustee services.  Accordingly, participants were subject to a
blackout period from September 25, 2008 to October 12, 2008, during which they were unable to
diversify their investment of assets, including those invested in Company common stock.

- **Investment Strategies:** To achieve its objective, this Investment Option invests exclusively in shares of LNC Common Stock.

- **Primary Risk:** Investment-Style Risk; Inflation Risk and Market Risk. This is a non-diversified Investment Option, investing in the stock of a single issuer. It is therefore a riskier investment than an Investment Option that invests in a diversified pool of stocks of companies with similar characteristics as this Account.

Employees' Plan SPD at 28; Agents' Plan SPD at 50; Delaware Plan SPD at 26.

Despite the increased risks associated with ESOPs, many employees chose to invest in the LNC Common Stock Fund. At the beginning of 2008, for example, the Employees' Plan held 2,676,381 shares of LNC common stock, valued at approximately $155,818,902. (Am. Compl. ¶ 44.) On February 4, 2008, LNC common stock closed at $55.30 per share. During 2008 and 2009, the value of LNC common stock declined because of losses in Lincoln National's investment portfolio, which were primarily attributable to losses in financial services fixed income securities, collateralized debt obligations, home-equity asset-backed securities, commercial mortgage-backed securities, and non-agency backed pass through residential mortgage-backed securities. Dann alleges: "despite the continuously mounting losses in the Company's investment portfolio–and the inevitable impact upon its stock price, Defendants took no action whatsoever to protect the Plans' assets from their substantial investment in the LNC Common Stock Fund." (Am. Compl. ¶ 119.) Instead, Defendants actually increased the Plans' holdings in Company stock. By year-end, although the Employees' Plan increased the number of shares it held to 3,485,115, the value of those shares fell to $65,659,563, dropping $90,159,339. (Am. Compl. ¶ 44.) Similarly, the value of the Agents' Plan's holdings in LNC common stock

fell by $25,547,401, and the value of the Delaware Plan's holdings fell by $5,446,477. (Am. Compl. ¶¶ 53, 59.) By May 5, 2009, the price of LNC common stock fell to $11.71 per share.

The Amended Complaint outlines the declining value of LNC common stock. In September 2008, the Company publicly disclosed its exposure to counterparty risk on derivative instruments with affiliates of Lehman Brothers and its exposure to investments in Lehman Brothers and Washington Mutual securities. Dann contends that "Lincoln National's holdings of securities issued by Washington Mutual and Lehman were particularly risky" and that the Company's "losses were preceded by numerous warnings signs and/or ratings agency downgrades." (Am. Compl. ¶ 124.)

On October 9, 2008, LNC common stock lost more than a third of its value. On October 10, 2008, Lincoln National announced third quarter gross investment losses of approximately $400 million, and stated that it would cut its dividend by 50%, from 41.5 cents per share to 21 cents per share. On November 17, 2008, LNC announced that it had applied to participate in the U.S. Treasury's Troubled Assets Relief Program ("TARP"). On November 19, 2008, shares of LNC common stock fell by another 40%. LNC common stock fell from $51.51 per share on September 2, 2008 to $13.73 per share on November 28, 2008.

After a rebound in December 2008 and January 2009, the Company's financial troubles continued. On March 14, 2009, A.M. Best Company, a ratings agency, downgraded the issuer credit and debt ratings of LNC and its subsidiaries from "aa" to "aa-." On March 19, 2009, Moody's Investor Service downgraded LNC's senior debt rating from "A3" to "Baa1." On the same day, the Company announced that it had nearly $1 billion in debt due in 2009. On May 5, 2009, after the Company reported a first quarter loss of $579 million, or $2.27 per share, the

price of LNC common stocked closed at $11.71 per share. By September 2009, however, LNC common stock rebounded to above $23 per share.

Dann contends that, throughout this time, Defendants should have discontinued the LNC Common Stock Fund as an investment option and divested the Plans' assets from LNC common stock because they knew or should have known that, due to the Company's exposure to losses stemming from problems within the financial services sector, LNC common stock was an imprudent investment for the Plans' assets. The Amended Complaint contains numerous allegations, supported by references to newspaper articles, congressional hearings, and economic studies, suggesting that a prudent fiduciary should have known of the impending collapse in the subprime lending industry and mortgage-backed securities market. (Am. Compl. ¶¶ 95-109.) Dann further alleges that some Defendants suffered from conflicts of interests because their compensation was tied to the price of LNC common stock, creating an incentive to keep the Plans' assets heavily invested in LNC.

Finally, Dann contends that as the value of the Company's investment portfolio deteriorated in 2008 and 2009, Defendants breached their duty of disclosure by (1) failing to reveal LNC's exposure to investment portfolio losses to plan participants and (2) issuing false and misleading statements that understated the level of risk. Some instances of alleged misrepresentations include:

- On February 4, 2008, the Company reported that its net income for the fourth quarter of 2007 included net realized losses on investments of $71 million, or $0.26 per diluted share. On the same day, Defendant Glass, Lincoln National's

CEO, stated that the Company was "well positioned for the future" and that its "underlying fundamentals remain strong." (Am. Compl. ¶¶ 112-13.)

- On April 29, 2008, Lincoln National announced its financial results for the first quarter of 2008, which included net realized losses on investments and derivatives of $27 million, or $0.10 per diluted share. Nonetheless, the Company stated that its "capital position and investment portfolio remain[ed] solid, with a strong overall credit quality and manageable exposures to risky asset classes." (Am. Compl. ¶¶ 116-17.)

- On July 29, 2008, the Company announced its financial results for the second quarter of 2008, which included gross realized losses on investments from write-downs for impairments on securities of $120 million, $73 million of which were write-downs on residential mortgage-backed securities. On the same day, Defendant Glass stated: "We are . . . maintaining our prudent and disciplined approach to risk management, capital and liquidity." (Am. Compl. ¶¶ 118, 120.)

These misstatements allegedly caused participants to continue to invest in the LNC Common Stock Fund, exposing them to investment losses.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).[5] A motion to

---

[5] A court deciding a Rule 12(b)(6) motion generally may consider a "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and emphasis omitted). Further, "a court may

dismiss should be granted under Rule 12(b)(6) if the moving party has established that the plaintiff is not entitled to relief under any reasonable reading of the complaint. Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). The plaintiff must make factual allegations sufficient to "raise a right to relief above the speculative level," which requires more than "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. DISCUSSION

Defendants move to dismiss the Amended Complaint, arguing: (1) that Dann lacks standing to bring this action on behalf of the Agents' Plan and the Delaware Plan and (2) that Dann has failed to allege that Defendants violated their duty to prudently and loyally manage Plan assets. Defendants argue that Dann's allegations regarding prudent and loyal management are insufficient because they fail to overcome the presumption of prudence for Defendants' decision to invest in LNC common stock and because Defendants met their disclosure obligations.

## A. Standing

Defendants argue that Dann lacks standing to bring a claim on behalf of the Agents' Plan and the Delaware Plan because Dann participated only in the Employees' Plan. Dann, as an individual non-participant, cannot commence an action directly on behalf of the Agents' Plan or Delaware Plan. 29 U.S.C. § 1132(a)(2) (allowing only "a participant, beneficiary or fiduciary" of a plan to bring an action for breach of fiduciary duty). He may, however, represent those plans as

---

consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

part of a class action. See Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410, 422 (6th Cir. 1998) ("[A]n individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."); Merck & Co., Inc. Sec. Derivative & ERISA Litig., No. 05-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) (allowing plaintiffs to represent participants in other plans provided they satisfy the requirements of Fed. R. Civ. P. 23); Mulder v. PCS Health Sys., Inc., 216 F.R.D. 307, 317 (D.N.J. 2003) ("Mulder has standing to pursue his claims on behalf of members of other employee benefit plans included in the definition of the class.").

Whether this case should be certified as a class action and, if so, whether Dann is a suitable class representative, are issues better addressed at the class certification stage. See Ward v. Avaya, 487 F. Supp. 2d 467, 481 (D.N.J. 2007) ("[W]hether Plaintiff has standing to assert claims on behalf of [the Plans] as part of a class action . . . is best resolved on a motion for class certification.") (internal quotations omitted); Pietrangelo v. NUI Corp., No. 04-3223, 2005 WL 1703200, at *14 (D.N.J. July 20, 2005) (same). Thus, I will defer the question of whether Dann may bring this action on behalf of the Agents' Plan and Delaware Plan until class certification.

**B. Failure to Prudently and Loyally Manage the Plans' Assets (Count I)**

Count I alleges that Defendants failed to prudently and loyally manage the Plans' assets. Plan fiduciaries have a duty of prudent and loyal management that requires them to make prudent decisions as to how to invest plan assets and obligates them to speak truthfully and disclose information that participants need in order to exercise their rights and interests under the plan. Defendants argue that because the pertinent portions of the Plans are ESOPs, plan fiduciaries are entitled to a presumption of prudence for their decision to invest in employer securities. Plaintiff

responds that the pertinent portions of the Plans are not ESOPs, that the <u>Moench</u> presumption is inapplicable because the Plans' fiduciaries had discretion regarding whether to offer the LNC Common Stock Fund as an investment option, and that the allegations in this action overcome a presumption of prudence. The parties also dispute whether Defendants satisfied their obligation to provide plan participants with accurate information about investing in LNC common stock.

## 1. The Pertinent Portions of the Plans Are ESOPs

A plan is an ESOP if it is "formally designated as such in the plan document" and is "designed to invest primarily in employer securities." 29 U.S.C. § 1107(d)(6); 29 C.F.R. § 2550.407d-6. Further, "[a]n ESOP may form a portion of a plan the balance of which includes a qualified pension, profit-sharing, or stock bonus plan which is not an ESOP." 29 C.F.R. § 2550.407d-6. <u>See also</u> <u>In re Avon Prod. Sec. Litig.</u>, No. 05-6803, 2009 WL 884687, at *1 (S.D.N.Y. Mar. 30, 2009) ("[T]he portion of the Plan that bought and held Avon shares was an ESOP.").[6]

Each of the Plans at issue contains a formally designated ESOP portion that is designed to invest primarily in employer securities. Employees' Plan § 1.4; Agents' Plan § 1.3; Delaware

---

[6] At oral argument on March 18, 2010, Dann argued that the Plans, which are designed to provide retirement benefits rather than invest in employer securities, cannot contain ESOP components because, to qualify as an ESOP, the *entire* plan must be "designed to invest primarily in employer securities." <u>See</u> Transcript of Oral Argument at 7-8; 29 U.S.C. § 1107(d)(6); 29 C.F.R. § 2550.407d-6. Although the statutes and regulations governing ESOPs speak in terms of how a plan must be organized, it is clear that "[a]n ESOP may form a portion of a plan." 29 C.F.R. § 2550.407d-6. Where an ESOP forms a portion of a larger plan, as here, it is sufficient that the ESOP portion meets the statutory and regulatory mandates. <u>See</u> <u>In re Avon Products, Inc. Sec. Litig.</u>, No. 05-6803, 2009 WL 848083, at *7-9 (S.D.N.Y. Mar. 3, 2009) (adopted by district court, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009)). Moreover, it is clear that the presumption of prudence may apply even when the plan, viewed as a whole, is designed to provide retirement benefits. <u>See</u> <u>Edgar v. Avaya</u>, 503 F.3d 340, 343 (3d Cir. 2007) ("The Plans state that they are 'intended to provide for a portion of the livelihood of Participants in their retirement.'").

Plan § 1.4 ("The Plan is a defined contribution profit sharing plan with a cash or deferred arrangement and matching contributions, as well as an ESOP component."); Employees' Plan § 2; Agents' Plan § 2; Delaware Plan § 2 (The ESOP component is "the portion of the Plan invested in the LNC Common Stock Fund."); Employees' Plan § 13.1; Agents' Plan § 13.1; Delaware Plan § 13.1 ("The Company has designated the LNC Common Stock Fund as the ESOP portion of the Plan, which is a stock bonus plan invested primarily in qualifying employer securities."). Thus, the pertinent portions of the Plans are ESOPs.

2. The *Moench* Presumption of Prudence Applies

Defendants argue that they are entitled to a presumption of prudence for their decision to invest in employer securities under Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), and Edgar v. Avaya, 503 F.3d 340 (3d Cir. 2007).[7]

ERISA requires that plan fiduciaries discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Unlike traditional pension plans, ESOPs are not intended to guarantee retirement benefits. Instead, the "concept of employee ownership constitute[s] a goal in and of itself." Moench, 62 F.3d at 568. ESOP fiduciaries also hold a special status because they are exempt from certain diversification requirements that apply to other pension plans. 29 U.S.C. § 1104(a)(2); 29 U.S.C. § 1107. Nonetheless, "[d]espite the

[7] Plaintiff argues that the Moench presumption is an evidentiary standard that is inapplicable on a motion to dismiss. The Third Circuit and other courts in this district, however, have required that plaintiffs allege facts sufficient to satisfy Moench. See Edgar, 503 F.3d at 349; Johnson v. Radian Group, Inc., No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009). See also Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1098-99 (9th Cir. 2004).

special status of ESOPs . . . ESOP fiduciaries are still required to act in accordance with the duties of loyalty and care that apply to fiduciaries of typical ERISA plans." Edgar, 503 F.3d at 346.

In Moench, the Third Circuit addressed when fiduciaries of ESOPs may be held liable for investing in employer securities. Moench set forth a three level standard of review: where the trust requires investments in a particular stock, the trustee is immune from judicial scrutiny; where the trust merely permits the trustee to invest in a particular stock, the trustee's investment decision is subject to de novo review; where trustees are not required to invest in employer securities, but are more than simply permitted to make such investments, an intermediate abuse of discretion standard applies. Edgar, 503 F.3d at 346-47.

Dann argues that Defendants had complete discretion regarding whether to offer the ESOP as an investment option. He thus contends that the Plans merely permitted investment in LNC common stock and that Defendants' decision to offer the ESOP as an investment option is subject to de novo review. In support of this argument, Plaintiff points to Plan language granting the Benefits Committee discretion regarding whether to offer any particular investment option:

> The Committee may add, substitute, or delete any of the Investment Funds at any time, in its sole discretion. Participants do not have the right to invest, or to continue to invest, in any Investment Fund, or other investment option that the Committee has substituted or deleted.

Employees' Plan § 5.4(c); Agents' Plan § 5.4(c); Delaware Plan § 5.4(c). Dann argues that this provision applies to the ESOP portion of the plan. He cites the following Plan language in support of his argument:

> The provisions set forth in Articles I through XII apply to the ESOP portion of the Plan in the same manner as they apply to the non-ESOP portion, except to the

extent their terms provide that they do not apply to the ESOP, or to the extent they are inconsistent with specific provisions in this Article XIII.

Employees' Plan Art. 13; Agents' Plan Art. 13; Delaware Plan Art. 13.

Because § 5.4(c) grants Plan fiduciaries discretion to terminate any of the Investment Funds at any time, it precludes a finding that Plan fiduciaries were required to offer the ESOP as an investment option. Section 5.4(c) lacks guidance, however, regarding whether the fiduciaries were more than "simply permitted" to offer the ESOP. Other sections of the Plans do contain such guidance and those provisions make it clear that the Plans do more than simply permit the fiduciaries to offer an ESOP. Each of the Plans, in describing its purpose and nature, specifically states that the Plan contains an ESOP component. Employees' Plan § 1.4; Agents' Plan § 1.3; Delaware Plan § 1.4 ("The Plan is a defined contribution profit sharing plan with a cash or deferred arrangement and matching contributions, as well as an ESOP component."). The Plans also state that each participant's account will include an ESOP subaccount. Employees' Plan § 5.1; Agents' Plan § 5.1; Delaware Plan § 5.1. Indeed, the Plans state that employer contributions "shall be at the Company's sole discretion (a) initially invested in the LNC Common Stock Fund . . . or (b) made in cash." Employees' Plan § 5.3; Agents' Plan § 5.3; Delaware Plan § 5.3. The Company clearly cannot exercise the discretion afforded in § 5.3 if fiduciaries discontinue the LNC Common Stock Fund as an investment option. Additionally, Article XIII contains detailed provisions governing the ESOP portion of the Plan. The LNC Common Stock Fund is the only investment fund that is discussed at length within the Plans.

Read as a whole, it is clear that the Plans contemplate and expect that the LNC Common Stock Fund is available as an investment option. See Herrera v. Wyeth, No. 08-4688, 2010 WL

1028163, at \*6 (S.D.N.Y. Mar. 17, 2010) ("From the references to the Stock Fund found throughout the plan agreements, it is clear that the agreements presuppose the existence of the Stock Fund.").  Because fiduciaries were more than simply permitted to offer the ESOP, I adopt the intermediate abuse of discretion standard as defined in <u>Moench</u> and <u>Edgar</u>.[8]

### 3. Plaintiff Pled Facts Sufficient to Overcome the Presumption of Prudence

The intermediate abuse of discretion standard provides for a rebuttable presumption of prudence:

> [A]n ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.
>
> In attempting to rebut the presumption, the plaintiff may introduce evidence that "owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust."

<u>Moench</u>, 62 F.3d at 571 (internal citation omitted).

Because the purposes of investing in an ESOP include goals other than saving for retirement, "short-term financial difficulties do not create a duty to halt or modify investments in an otherwise lawful ERISA fund that consists primarily of employer securities. . . .  Plan fiduciaries do not have a duty to depart from ESOP or EIAP plan provisions whenever they are aware of circumstances that may impair the value of company stock."  <u>Johnson v. Radian Group, Inc.</u>, No. 08-2007, 2009 WL 2137241, at \*15 (E.D. Pa. July 16, 2009).  <u>See also</u> <u>Kirschbaum v.</u>

---

[8] In contrast, where courts have found that a plan "simply permits" investment in employer securities, the plan language was far more permissive.  <u>See</u> <u>In re Schering-Plough Corp. ERISA Litig.</u>, 420 F.3d 231, 236 (3d Cir. 2005) (investment options "may include such equity funds, international equity funds, fixed income funds, money market funds, a Company Stock Fund, and other funds or investment vehicles as the Investment Committee elects to offer").

Reliant Energy, Inc., 526 F.3d 243, 256 (5th Cir. 2008) ("One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions."). Thus, to demonstrate a breach of fiduciary duty, a plaintiff must allege "dire circumstances," not merely an expected decline in the value of company securities. Edgar, 503 F.3d at 348-49.

Reading the Amended Complaint most favorably to the non-moving party, Dann has alleged "dire circumstances" sufficient to overcome the presumption of prudence. Dann's allegations satisfy the three factors the Third Circuit pointed to in Moench: "the precipitous decline in the price of [Company] stock, as well as the [defendants'] knowledge of [the Company's] impending collapse and its members' own conflicted status." Moench, 62 F.3d at 572.

First, Dann has pointed to a precipitous decline in the price of LNC common stock. The value of LNC common stock fell from $53.08 per share on February 4, 2008, the beginning of the Class Period, to $5.01 per share on March 9, 2009, a 90.6% drop. Even considering the rebound to $23 per share in September 2009, LNC common stock suffered a 57% drop. Plaintiffs have overcome the presumption of prudence in cases involving even smaller declines in value. See, e.g., Merck & Co. Sec., Derivative & ERISA Litig., MDL No. 1658, Nos. 05-1151, 05-2369, 2009 WL 790452, at *4 (D.N.J. Mar. 23, 2009) ("Though it is clear from this vantage point that [the Company] survived . . . the allegations in the Complaint depict a company facing a dire situation. [Company] stock plunged by almost 40%."). In contrast, the Third Circuit affirmed the dismissal of the plaintiffs' claims in Edgar where there was only a 25% drop in stock price. Edgar, 503 F.3d at 342.

Second, Dann alleges Defendants knew or should have known of the Company's serious financial difficulties. The Amended Complaint contains specific allegations explaining why Defendants knew or should have known that the value of LNC common stock would seriously deteriorate, resulting in losses to the Plans unanticipated by the settlors. For example, Dann alleges that Defendants knew or should have known of the Company's exposure to losses in its investment portfolio due to declines in subprime and Alt-A residential mortgage-backed securities, the Company's exposure to losses in its investment portfolio due to equity investments in the troubled financials market, and the Company's exposure to decreasing capital levels. This exposure was especially severe when viewed in conjunction with $1 billion in debt that was due in 2009. Indeed, as a result of the dire circumstances LNC faced, two ratings agencies downgraded LNC's credit and debt ratings during the Class Period. In addition, Dann alleges that Defendants knew or should have known that the Company's financial situation was dire when LNC acquired a local bank so that it would be eligible to apply for TARP funds, which were available only for institutions with "troubled assets." Although the Amended Complaint falls short of alleging LNC's "impending collapse," a company need not "be on the brink of bankruptcy before a fiduciary is required to divest a plan of employer securities." Edgar, 503 F.3d at 349 n.13. See also In re Syncor ERISA Litig., 516 F.3d 1095, 1102 (9th Cir. 2008) ("While financial viability is a factor to be considered, it is not determinative of whether the fiduciaries failed to act with care, skill, prudence, or diligence.").

Third, Dann alleges that some Defendants suffered from conflicts of interest because their compensation was tied to the price of LNC common stock, creating an incentive for those

Defendants to keep the Plans' assets heavily invested in LNC in order to support the stock price.

Fiduciaries have less discretion regarding plan investments when there is a conflict of interest:

> In considering whether the presumption that an ESOP fiduciary who has invested in employer securities has acted consistently with ERISA has been rebutted, courts should be cognizant that as the financial state of the company deteriorates, ESOP fiduciaries who double as directors of the corporation often begin to serve two masters. And the more uncertain the loyalties of the fiduciary, the less discretion it has to act.

Moench, 62 F.3d at 572. See also Lalonde v. Textron, Inc., 369 F.3d 1, 7 (1st Cir. 2004)

(considering hypothetical where "plaintiffs unearth during discovery documents showing that, during the class period, the [Company] officials responsible for administration of the ESOP . . . wanted the plan documents to be amended so as to keep their employees from investing in a dying venture" but "these officials were dissuaded from so acting by higher-ups concerned about sustaining the company's stock price until stock options that they held could vest.").[9] It is impossible to determine the full extent of these conflicts and degree to which they motivated Defendants' decisions without allowing discovery to proceed.[10]

There is no question that Plaintiff faces a heavy burden going forward: the presumption of prudence is a difficult standard to overcome. The Amended Complaint, however, alleges sufficiently dire circumstances that might cause a prudent plan fiduciary to discontinue the LNC Common Stock Fund as an investment option and divest Plan assets from LNC common stock.

---

[9] The Supreme Court recently affirmed that a court should consider conflicts of interest even where the plan and relevant statutory language allow the conflict to exist. Metro. Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2348-49 (2008). The Court stressed that a "conflict is a factor to be considered by the court in determining later whether there has been an abuse of discretion." Id. at 2349-51 (internal citations and quotations omitted).

[10] It would be of interest to know if Defendants were selling their own holdings of LNC common stock during this period.

See Moench, 62 F.3d at 571 ("The plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate.").

Although the settlors encouraged Plan fiduciaries to offer an ESOP component, the settlors also granted discretion to discontinue the LNC Common Stock Fund as an investment option at any time. The settlors could have expected that a prudent trustee who knew of the Company's dire circumstances would exercise that discretion. See Edgar, 503 F.3d at 346 ("ESOP fiduciaries are still required to act in accordance with the duties of loyalty and care that apply to fiduciaries of typical ERISA plans."). Quite simply, Dann is entitled to discovery so that he may develop a factual record supporting his allegations. While it is clear that the presumption of prudence can be applied on a motion to dismiss, Edgar, 503 F.3d at 349, courts should be wary of applying that standard too strictly before plaintiffs have had an opportunity for discovery:

> [I]f Plaintiffs allege facts that clearly preclude their ability to overcome the presumption of prudence, the Court will dismiss the Complaint. But in closer cases where the allegations suggest that with future discovery there is a 'reasonably founded hope that a plaintiff would be able to make a case,' Courts should not, in effect, apply Rule 56 standards to the complaint on a motion to dismiss. Thus, while the presumption of prudence is a factor in a motion to dismiss, Plaintiffs do not have an affirmative burden to plead the specific facts necessary to overcome the presumption. Yet, consistent with Rule 8(a)'s notice pleading requirement, they nonetheless have the duty to plead sufficient facts to demonstrate that they have a plausible ERISA claim in light of the presumption of prudence.

Shanehchian v. Macy's, Inc., No. 07-828, 2009 WL 2524562, at *6 (S.D. Ohio Aug. 14, 2009) (citing In re Ford Motor Co. ERISA Litig., 590 F. Supp. 2d 883, 907 (E.D. Mich 2008)). Thus, I will deny Defendants' Motion to Dismiss with respect to Dann's prudent investment claim.

Dann also alleges that Defendants breached their fiduciary duty by (1) failing to disclose the risks associated with investing in LNC common stock and (2) issuing false and misleading statements that overstated LNC's health.

Dann's failure to disclose claim fails.  The Plan documents and SPDs adequately informed plan participants about the risk inherent in investing solely in employer securities by providing the same disclosures that the Third Circuit approved in Edgar.  The Third Circuit stated:

> The Summary Plan Descriptions inform Plan participants that their investments are tied to the market performance of the funds; that each fund carries different risks and potential returns; that participants are responsible for investigating the investment options; and that, in doing so, they might consider seeking the advice of a personal financial advisor.  In addition, the Plan Descriptions explicitly warn participants that there are particular risks associated with investing in a non-diversified fund. Nowhere in the Plan Descriptions or the Plans themselves are participants guaranteed a particular return on their investments.  These disclosures were sufficient to satisfy defendants' obligation not to misinform participants about the risks associated with investment in [Company stock].  Under Third Circuit law, they did not have a duty to give investment advice or to opine on the stock's condition.  Rather, the information provided Plan participants the opportunity to make their own informed investment choice.

Id. at 350.  The SPDs address these very same issues:  they warn that it is a participant's sole responsibility to select investment options, that the stock market fluctuates daily, and that the LNC Common Stock Account, as a non-diversified investment option, is riskier than a diversified investment.  Employees' Plan SPD at 8, 28; Agents' Plan SPD at 33, 50; Delaware Plan SPD at 6, 26.  The SPDs specifically warn that the LNC Common Stock Account is subject

to Investment-Style Risk, Inflation Risk, and Market Risk, all of which are defined and explained within the SPDs. <u>Id.</u>

Similarly, Dann cannot establish a failure to disclose claim based on Defendants' failure to disclose adverse corporate events because fiduciaries have no affirmative duty to provide investment advice or opine on the health of employer securities: "[D]efendants fulfill[] their duty of disclosure under ERISA by informing Plan participants about the potential risks associated with investment in [Company stock]." <u>Edgar</u>, 503 F.3d at 350-51. Failure to inform plan participants about specific corporate developments does not constitute a breach of ERISA's disclosure obligations. <u>Id.</u> <u>See also</u> <u>Johnson</u>, 2009 WL 2137241 at *19 ("That the defendants did not inform Plan participants about several adverse corporate developments prior to the allegedly misleading announcements at issue did not on its own give rise to a breach of the duty of disclosure.") (internal quotations and citations omitted).

Unlike a simple failure to disclose, however, plaintiffs may succeed where they demonstrate that plan fiduciaries made false and misleading statements. Although fiduciaries lack an affirmative duty to disclose adverse corporate events, when a fiduciary chooses to speak about the Company's financial condition he must do so truthfully. <u>See</u> <u>Merck</u>, 2009 WL 790452 at *5 (allowing ERISA "communications claim which involves allegedly deliberate efforts to mislead investors"). Dann contends that Defendants distributed documents that contained materially misleading statements to plan participants. Because this claim is based on many of the same facts as Plaintiff's prudent investment claim, I will allow discovery to proceed without prejudice to Defendants to raise the same arguments at the summary judgment stage.

**C. Failure to Adequately Monitor Other Fiduciaries (Count II)**

Defendants move to dismiss Count II solely on the ground that it is derivative of Plaintiff's underlying claim in Count I. Because I allow Count I to proceed, there is no basis to grant Defendants' Motion to Dismiss with respect to Count II.

**IV. CONCLUSION**

With the present interest in the etiology of the financial crisis, it would be irresponsible to cut off discovery into the allegations in the Amended Complaint at this stage of the litigation. For the reasons discussed above, I will deny Defendants' Motion to Dismiss as qualified by this Memorandum.


s/Anita B. Brody

_____
ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to: